## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA LORELLI,<br><br>                          Plaintiff,<br><br>v.<br><br>WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO. | Civil Action No.: 2:24-cv-05606<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I.        NATURE OF THE COMPLAINT

1.    This is an action for declaratory judgment, permanent injunctive relief, damages, costs, and attorneys' fees, alleging a continuing pattern of discriminatory conduct in violation of the following provisions of the American Disabilities Act ("*ADA*") and the Fair Housing Act ("*FHA*"): 42 U.S.C. § 1983, 42 U.S.C. § 3601, 42 U.S.C. § 3602, 42 U.S.C. § 3604, 42 U.S.C. § 3613, and 42 U.S.C. § 3617; New York Executive Law.

2.    Plaintiff PATRICIA LORELLI ("*Plaintiff*" and/or "*Ms. Lorelli*"), who suffers from a disability, also asserts causes of action for breach of contract and infliction of emotional distress, both negligent and intentional. This action was filed against WOODLANDS APARTMENT CORP. (LANDLORD), GREENVIEW PROPERTIES, INC. (MANAGEMENT COMPANY) AND THE BOARD OF DIRECTORS OF THE WOODLANDS A CPROVATE COMMUNITY (BOARD) (hereinafter collectively referred to

as the "*Corporate Defendants*").

3.    The instant action is related to an underlying holdover Petition filed in the Suffolk County District Court under Index No. LT-002002-22/IS and related appeal that is currently pending before the Appellate Term, Second Department under Docket No. 2024-01029 which was pursued in bad faith by the TAYLOR ELDRIDGE AND ENDRES P.C., DAVID ELDRIGE, ESQ. AND JENNINE CULLEN, ESQ. (hereinafter collectively referred to as the "*Law Firm Defendants*") despite the fact that the records submitted at Trial of the management company showed no such violations during the time period alleged in the Notice of Termination filed with the Court on February 26, 2024.

4.    Further, the Landlord accepted the maintenance payment tendered by Ms. Lorelli on February 1, 2024, after the alleged violations took place and before the Notice of Termination was filed on February 26, 2024. Thereafter, the Landlord cashed said payment dated February 1, 2024 on March 14, 2024, thus reinstating the Proprietary Lease and/or creating a new tenancy with the Plaintiff.

5.    Despite this fact, the Law Firm Defendants proceeded with Trial in connection with the holdover proceedings, in bad faith.

6.    Defendant SHAREEF FIORENTINO ("*Fiorentino*") is a neighbor and was part and parcel of the discrimination scheme and court proceedings filed against Plaintiff Lorelli.

7.    In October 2002, Ms. Lorelli purchased shares in the co-op for the property located at 75 Finch Lane, Islip, New York 1175 ("*Premises*"). Ms. Lorelli initially purchased the property with her Husband, Enn Plato, who was deceased in December 2008.

8.    Nonetheless, Ms. Lorelli continued to reside in said premises alone for the

years following the death of her Husband peacefully and without issue.

9.    Starting in 2018, sixteen (16) years after Ms. Lorelli lived in the premises peacefully and without issue, Ms. Lorelli's experience dramatically changed for the worse. At that point in time, a new management company was hired by the Woodlands Apartment Corp. and new neighbors came into the complex, including Shareef Fiorentino, who purchased the shares in the unit directly above Ms. Lorelli's unit in the premises.

10.    At this point, upon the introduction of the new management company and the new neighbor, Ms. Lorelli began to experience discrimination against her for her disability in the form of comments from the neighbors. When Ms. Lorelli went to water her lawn, the neighbor outside stated "oh crazy's out."

11.    Further, Ms. Lorelli maintained two gardens - one garden in the front of the coop and one garden in the back. Ms. Lorelli maintained these gardens from 2002-2024. While Ms. Lorelli was hospitalized in May 2024 due to health issues related to her disability, the front garden was dug up by Shareef Fiorentino and he began utilizing the garden for his personal use, with explicit permission from the management company. Ms. Cullen directed Ms. Lorelli may not touch the front garden as it is "common property" and claimed that this portion of the property is maintained by landscapers. It is not.

12.    The above incidents are just fragments of the litany of abuse that Ms. Lorelli suffered over the past several years in the form of verbal assaults, violent threats and other discriminatory conduct that has lasted for a period six years. In early 2024, Shareef Fiorentino called the police on Ms. Lorelli multiple times for her doing nothing more than residing inside her apartment, keeping to herself. Further, Mr. Fiorentino peered through

her window at various points to see what she was doing, in violation of her rights. There have been various times where neighbors have photographed Ms. Lorelli outside her apartment sweeping and took videos of her. Such conduct is not permissible or legal and despite Ms. Lorelli's request for the neighbors to cease and desist such conduct, they have continued in violation of Ms. Lorelli's privacy and right to fair housing.

13. Even more so, Ms. Lorelli has been the subject of vandalism from various neighbors who have caused damage to her property time and time again in the form of painting, breaking items, and stealing items from her premises.

14. Ms. Lorelli has had to call the police on the neighbors as the management company did nothing to help her safety or concerns. Reports to the management company only served to further exacerbate Ms. Lorelli's issues. At one point, a neighbor physically assaulted Ms. Lorelli on the premises. Greenview Properties, Inc. did nothing about this incident.

15. Rather than protect Ms. Lorelli, the Woodlands Apartment Corp., Greenview Properties Inc., the neighbors (including Mr. Fiorentino) and the Board of Directors of the Woodlands a Private Community engaged counsel in the form of Taylor, Eldridge & Endres, P.C. who thereafter sought to evict Ms. Lorelli on the basis of her disability through the guise of a Holdover Petition in Landlord Tenant Court that was filed in or about December 2023.

16. Not only did such Petition seek to evict Ms. Lorelli from the Premises, it also sought to deprive Ms. Lorelli of ownership of the property in question, in violation of her rights.

17. Such Petition contained substantial defects and was not properly served upon Ms.

Lorelli. Nonetheless, Taylor, Eldridge & Endres, P.C. moved forward with a default knowing that Ms. Lorelli was hospitalized and was not properly served.

18.  The default was duly vacated and the parties stipulated to terms wherein Ms.

Lorelli was permitted to remain in the premises, without facing eviction or the loss of ownership of her property provided that she duly complied with the rules stated therein.

19.  Ms. Lorelli complied with the terms of the aforementioned Stipulation until its expiration on May 1, 2024.

20.  Nonetheless, Taylor, Eldrige & Endres, P.C. proceeded on alleged violation of the Stipulation claiming there was a noise violation in November 2023 that occurred during the day in the form of "banging on the walls" and that the fire department was called for smoke in Ms. Lorelli's co-op in or about January 2024, for which there was absolutely no damage and was found to be unintentional by responding officers. No one was required to leave the building, there was no fear of safety or threat to anyone's physical harm.

21.  The primary fact witness for the Woodlands Apartment Corp. was Shareef Fiorentino who had admittedly stated on the record that his smoke alarm was not working at the time the fire department arrived in January 2024 and it was reported by other neighbors that Ms. Lorelli, in fact, was the one who had called 911 to report this issue.

22.  It is evident that the failure to maintain a working smoke alarm is a violation of the coop's rules but rather than pursue Shareef Fiorentino for his blatant violations, Defendants collectively herein rather seek to continue their disparate treatment and discriminatory conduct against Ms. Lorelli. It is evident that the safety of the shareholders is not what is paramount, but rather that the Defendants herein have discriminated against Ms.

Lorelli on the basis of her disability and are solely seeking to evict her on that basis alone. This is true as there cannot be a noise violation during the day and further that Ms. Lorelli did not violate any rules as there was some smoke from food on a stove that did not result in any damage to persons or property.

23.  It is evident that such lawsuit in landlord tenant court is nothing more than a pretext to the discrimination which forms the basis of the lawsuit herein.

24.  Further, Woodlands Apartment Corp. accepted February 2024's maintenance payment from Ms. Lorelli and cashed said check on March 14, 2024, seven days after the Warrant of Eviction was issued on March 7, 2024. Thus, Woodlands Apartment Corp. vitiated their right to proceed in the holdover proceeding. Nonetheless, the Defendants proceeded in their action against Ms. Lorelli and testified in said matter, which only served as confirmation of the discriminatory conduct Ms. Lorelli has faced herein from both the Woodlands Apartment Corp., Greenview Properties, Inc., the Board of Directors of The Woodlands A Private Community, neighbors immediately near Ms. Lorelli, specifically, Shareef Fiorentino, and the law firm of Taylor, Eldridge, and Endres, P.C.

25.  Ms. Lorelli has consistently been subjected to egregious harassment due to her disability, including the repeated use of threats to Ms. Lorelli, her property and her physical safety.

26.  While Ms. Lorelli initially reported the conduct to the Board, she did not receive any intervention and the complaints were not investigated or intervened in anyway. When Ms. Lorelli complained about violations of other neighbors, the Board failed to penalize such violations in any manner.

27.  The Defendants' failure to investigate Ms. Lorelli's complaints concerning the violent harassment and concomitant failure to intervene on Ms. Lorelli's behalf violated her rights under the FHA and other civil rights statutes by creating a hostile living environment and interfered with her right to peaceful enjoyment of her home.

28.  The FHA and other civil rights statutes prohibit a landlord from tolerating and/or facilitating harassment by a neighboring tenant.  Specifically, the FHA require a landlord to take reasonable steps to investigate allegations of harassment by a neighboring tenant once notified, as it would any alleged violation of a lease term.

29.  The Defendants clearly took no steps to investigate clear evidence of harassment or protect Ms. Lorelli even after it was established that Mr. Fiorentino had broken the law, let alone the terms of his lease.

30.  The Defendants could, for example, have terminated Mr. Fiorentino's lease or evicted him.  Instead, they chose to have Mr. Fiorentino testify as a witness against Ms. Lorelli in an attempt to evict her.

31.  In fact, Mr. Fiorentino testified to his own violation of his Proprietary Lease at Trial, with respect to a non-working smoke detector which is very dangerous, yet was not deemed worthy of pursuit by the management company or Board to any degree, in the form of a fine, litigation or otherwise. Nor were any of the other noise complaints about other neighboring tenants. While Ms. Lorelli maintains she has committed no violations during the alleged time period of November 2023 and January 2024, in the event that violations are selectively pursued, such conduct constitutes disparate treatment in violation of the FHA and ADA.

32.  Mr. Fiorentino testified that Ms. Lorelli should "move into a home for people who have disabilities" and confirmed this belief, in writing, via e-mail dated January 18, 2024. Such e-mail would most certainly submitted in opposition to any motion to dismiss the pleadings. Ms. Lorelli faced disparate treatment by all Defendants herein, including Mr. Fiorentino, which are violative of the statutes that prohibit discrimination.

33.  The underlying violations at Trial were with respect to November 2023 and January 2024, at Trial it was inquired of the Corporate Defendants' Witness, "And is it customary for Greenview Properties to impose fines on any shareholders in the event that it is believed that the shareholder violated a rule on the property?" Answer: "As per the Board's approval if the Board tells us that there's a violation yes we issue the fine." Question: "Okay. And based on your review of this bill if you look at page two do you see any fines assess against Ms. Lorelli for November 2023?" Answer: "For November of 2023, no." Question: "Do you see any fines assessed against Ms. Lorelli for December of 2023?" Answer: "No." Question: "Do you see any fines assess against Ms. Lorelli for January 2024?" Answer: "No." This is quoted from the Transcript of Trial dated August 12, 2024, and can be reproduced herein to the extent necessary. (Pages 22-23 of Courtney McDermott's testimony on August 12, 2024).

34.  As a result of Defendants' harassing conduct, and the Defendants' toleration and/or facilitation of that conduct, Mr. Lorelli was subjected to a hostile living environment and suffered significant injury for which she now seeks redress in this Complaint.

## I.          JURISDICTION AND VENUE

35.    Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a)-(b) and by 28 U.S.C. §§ 1331, 1337, 1343 and 2201.  The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state law claims for breach of contract, negligent infliction of emotional distress, and intentional infliction of emotional distress.

36.    Venue is proper in this District because the claims arose in the Eastern District of New York.

## II.          PARTIES

37.    Plaintiff Patricia Lorelli is a seventy-one (71) year old woman who has resided at 75 Finch Lane for (23) years since 2002. Ms. Lorelli suffers from a mental disability for which she receives treatment. At all relevant times, Ms. Lorelli has resided at the Woodlands Apartment Corp. at 75 Finch Lane, Unit 1A, Islip, New York 11751.

38.    Defendant Woodlands Apartment Corp. is a New York Corporation. Woodlands Apartment Corporation owns the premises for which Ms. Lorelli's shares are held for her unit located at 75 Finch Lane, Islip, New York 11751. Woodlands Apartment Corp. does business in the State of New York and does business at its office, located at 90 Finch Lane, Islip, New York 11751.

39.    Defendant Greenview Properties is the property manager at the Premises and is an agent of Defendant Woodlands Apartment Corp.

40.    Defendant Board of Directors, of the Woodlands, A Private Community, is whom makes decisions on behalf of the Woodlands Apartment Corp., including the decision to hire Taylor,

Eldridge & Endres, P.C. and institute the Landlord Tenant proceedings against Ms. Lorelli.

41.   Defendant Law Firm Taylor, Eldridge & Endres, P.C. has served to continue and exacerbate the discriminatory conduct against Ms. Lorelli in the form of disparate treatment, failure to make reasonable accommodations, the failure to cease the harassment and discrimination against Ms. Lorelli, but rather further the discrimination against her in the form of litigation.

42.   Defendant David Eldrige, Esq. is a Partner at the law firm of Taylor, Eldridge & Endres, P.C. responsible for the handling of the matter against Ms. Lorelli in landlord tenant court.

43.   Defendant Jennine Cullen, Esq. is an Associate at the law firm of Taylor, Eldridge & Endres, P.C. responsible for handling the matter against Ms. Lorelli in landlord tenant court.

44.   Defendant Shareef Fiorentino is Ms. Lorelli's upstairs neighbor who, at all relevant times, resided at the complex at 75 Finch Lane, Islip, New York 11751 since in or about 2018.

## III.    FACTUAL BACKGROUND

### *October 2002: Ms. Lorelli moves to Woodlands Apartment Corp.*

45.    In 2002, Ms. Lorelli and her Husband went looking for a place to reside and came upon a listing at Woodlands Apartment Corp.

46.    Upon viewing the apartment and surrounding neighborhood, Ms. Lorelli and her Husband felt at home. Ms. Lorelli and her Husband enjoyed the perks that the complex had to offer in the form of a swimming pool, a basketball court, gardens in both the back and the front yards of the home.

47.    As with most co-op's, Ms. Lorelli and her Husband were interviewed and approved by the Board of Directors at the time in 2002. The shares in the property were duly purchased in October 2002 and the parties move in.

48.    Ms. Lorelli and her Husband resided in the unit peacefully together until her Husband passed away in late 2008.

49.    Thereafter, Ms. Lorelli continued to reside in the unit peacefully alone for more than a decade.

### *2018: Greenview Properties Takes over as Management Company; Shareef Fiorentino Moves in; Harassment Begins*

50.    While Ms. Lorelli's first sixteen (16) years were uneventful, that all changed when Greenview Properties took over as the Management Company and Shareef Fiorentino moved into to the upstairs unit at 75 Finch Lane.

51.    Mr. Fiorentino began to state discriminatory comments against Ms. Lorelli outside her apartment.

52.    Ms. Lorelli was shocked and felt fearful. Ultimately, Ms. Lorelli had to lock herself inside her apartment for periods of time wherein she could only leave to obtain

necessary items. Ms. Lorelli did not respond to Defendant Fiorentino's comments.

*December 2022: Taylor, Eldridge and Endres, P.C. files a Holdover Petition and obtains a Default Judgment while Ms. Lorelli is Hospitalized in February 2023*

53.     In December 2022, the Law Firm of Taylor, Eldrige and Endres, P.C. filed a. Holdover petition and obtained a default Judgment while Ms. Lorelli was hospitalized in February 2023. Ms. Lorelli was never served a copy of the petition.

54.     Ultimately, the default Judgment was vacated and the parties entered into a Stipulation that was set to expire on May 1, 2024 providing that Ms. Lorelli's possession of the property would be reinstated upon compliance with all terms. Ms. Lorelli duly complied with all terms.

55.     Nonetheless, Taylor, Eldridge & Endres, P.C. filed an alleged violation of the Stipulation based on noise complaints during the day in November 2023 and due to smoke from a food item on the stove in January 2024, which resulted in no emanating smoke from her unit, nor did it result in any damage to property or persons nor require anyone to vacate their unit for any period of time. As a result, such conduct was not a violation of the proprietary lease.

56.     During this timeframe wherein the Stipulation was in effect, Ms. Lorelli kept to herself in her apartment.

57.     Despite this fact, Mr. Fiorentino continued to called the police upon Ms. Lorelli for simply residing in her apartment. There was no basis for this harassment.

58.     Further, Mr. Fiorentino testified in the landlord tenant matter with respect to the alleged violations and testified that his smoke alarm was not working. Despite Mr. Fiorentino himself admittedly being in violation of the terms of his proprietary lease, and the law, by not having a working fire alarm (among other things such as taking over Ms. Lorelli's garden, continuous and excessive noise at nights, verbal and physical threats to Ms. Lorelli), none of the other Defendants herein have

sought to hold Mr. Fiorentino accountable for such conduct. This constitutes disparate treatment which is a form of discrimination and violation of the law for which Ms. Lorelli seeks redress herein.

59. Mr. Fiorentino testified that Ms. Lorelli should "move into a home for people who have disabilities" and confirmed this belief, in writing, via e-mail dated January 18, 2024.

60. Despite receiving information about Mr. Fiorentino's and other neighbor's neighbor's harassing conduct towards Ms. Lorelli, the Defendants took no actions or steps to investigate or intervene.

61. Ms. Lorelli continued to feel afraid, anxious, and unwelcome in her own home.

*March 2024: Woodlands Apartment Corp. Cashed Ms. Lorelli's February 2024 Maintenance Payment*

62. Ms. Lorelli duly continued to pay her monthly maintenance fees since residing in the unit.

63. In fact, the Defendants cashed Ms. Lorelli's payment for February 2024's maintenance on March 14, 2024, seven days after the Warrant of Eviction was issued on March 7, 2024. This issue was raised in landlord tenant Court as well as the fact that the landlord vitiated their right to proceed in holdover based upon the acceptance of said payment.

64. Nonetheless, the Woodlands Apartment Corp. sought to evict Ms. Lorelli, with the primary witness being Shareef Fiorentino.

65. Mr. Fioentino's testimony therein only served to further confirm that his conduct stated herein was discriminatory against Ms. Lorelli on the basis of her disability.

66. Further, Ms. Lorelli requested a reasonable accommodation in the form of communications through counsel for all invoices and other related matters. This request was made in writing and was not followed by Defendants at any point in

litigation.

67.     In fact, Greenview Properties outright failed to submit billing statements to Ms. Lorelli or her counsel for years. Ms. Lorelli recently learned that she has been overpaying in the sum of $200 per month for years, and Greenview Properties continues to submit bills that do not reflect her payments and reflect fines for which she is disputing. This conduct is all part of the claims for relief Plaintiff seeks herein.

68.     Further, Greeenview Properties is unlawfully assessing fines, fees, and attorneys fees as against the Plaintiff as a form of harassment.

***Defendants' Obligations Under the Fair Housing Act and Civil Rights Laws***

69.     Pursuant to the Fair Housing Act, § 1983, upon receiving notice of Defendants' harassing conduct towards Ms. Lorelli,  Defendants had an obligation to investigate and to take prompt and effective remedial action. Defendants' toleration and/or facilitation of Mr. Fiorentino's harassment created a hostile living environment and violated these statutory provisions.

70.     Courts have recognized claims for hostile living environment where (1) the conduct was unwelcome; (2) it was based on disability; (3) it was sufficiently severe or pervasive as to alter the plaintiff's living environment and to create an abusive environment; and (4) the defendant knew or should have known of the harassment and took ineffectual action to correct the situation and thereby tolerated and/or facilitated the discrimination.

71.     Each of the four above elements is satisfied here. All the conduct by Defendants against Ms. Lorelli in the form of harassment, discrimination, and other such conduct was most certainly unwelcome; it was motivated by Ms. Lorelli's disability; it was sufficiently severe or pervasive as to alter her living environment and to create an abusive environment and the Defendants knew of the harassment and failed to correct same, in fact, the all Defendants herein condoned such conduct.

### Defendants' Obligations Under the Lease

72. In addition to any obligations imposed upon them by the Fair Housing Act and other federal laws, Defendants had common law duties to investigate and intervene in order to protect Ms. Lorelli from neighbor harassment. Their toleration and facilitation of Mr. Fiorentinos' actions interfered with Ms. Lorelli's peaceable enjoyment of her home, in violation of their lease agreement.

73. Ms. Lorelli maintains a proprietary lease as and for her unit located at 75 Finch Lane, Unit 1A, Islip, New York 11751 and same was executed in October 2002.

74. Defendants violated the October 2002 Lease provision by failing to investigate

or otherwise intervene once notified of the harassing conduct against Ms. Lorelli, thus the Defendants denied Ms. Lorelli peaceable and quiet enjoyment of her apartment.

54. Upon information and belief, Defendants had authority pursuant to this lease agreement with neighboring Defendant Fiorentino to counsel, discipline, or evict him due to his continued harassment of Ms. Lorelli, which violated the lease agreement and the law. T h e Defendants would have been justified in terminating the lease of a tenant for conduct far less egregious than a hate crime.

55. However, rather than impugn liability upon Mr. Fiorentino, Defendants Woodlands Apartment Corp., Greenview Properties, the Board of Directors, the law firm of Taylor, Eldridge and Endres, all sought to utilize Mr. Fiorentino as a sword to help evict Ms. Lorelli on the basis of her disability.

### Defendants Are Jointly and Severally Liable

56. At all relevant times, Woodlands Apartment Corp. is the entity which the premises 75 Finch Lane, Islip New York 11751 is located.

57. At all relevant times, Greenview Properties is the managing agent of the property and acting management company.

58. At all relevant times, Defendant Board of Directors was an agent of Woodlands

Apartment Corp.

59.    At all relevant times, Taylor, Eldridge & Endres, P.C. was a law firm representing Woodlands Apartment Corp. in litigation against Ms. Lorelli.

60.    At all relevant times, David Eldrige, Esq. is a partner in the firm of Taylor, Eldrige and Endres P.C. handing the matter against Ms. Lorelli in landlord tenant court.

61.    At all relevant times, Jennine Cullen, Esq. is an associate in the firm of Taylor, Eldrige and Endres P.C. handing the matter against Ms. Lorelli in landlord tenant court.

62.    At all relevant times, Shareef Fiorentino is a shareholder at the Woodlands Apartment Corp., residing at 75 Finch Lane, and was a witness in the holdover case against Ms. Lorelli.

63.    Woodlands Apartment Corp. failed to adequately manage, oversee, and

supervise the actions of their agents and/or representatives.

64.     Greenview Properties failed to adequately manage, oversee, and supervise the actions of their agents and/or representatives.

65.     Board of directors failed to adequately manage, oversee, and supervise the actions of their agents and/or representatives.

66.     Taylor, Eldridge & Endres, P.C. failed to adequately manage, oversee, and supervise the actions of their agents and/or representatives, including David Eldridge, Esq. and Jennine Cullen, Esq.

67.     At all times relevant to the events described herein, all Defendants acted as an agent and/or employee of Woodlands Apartment Corp., acted within the scope of her employment as an agent, employee, and/or representative. As an agent and/or employee, Defendants carried out the discriminatory practices described herein (a) upon information, at the direction of, and with the consent, encouragement, knowledge, and ratification of Woodlands Apartment Corp.; (b) under Woodlands Apartment Corp's authority, control, and supervision; and/or (c) with the actual or apparent authority of Defendant Woodland's Apartment Corp.

### *Harm to Ms. Lorelli*

68.     Because of Defendants' actions, Ms. Lorelli was unable to fully use and enjoy the Premises despite having met her maintenance obligations each month.

69.     Defendants deprived Ms. Lorelli of the full value of the Premises.

70.     Ms. Lorelli has continued to pay maintenance in the sum of $670.29 per month. Ms. Lorelli's out-of-pocket expenses are compensable harm.

71.     Beginning in 2018 and continuing to the present, Defendants' actions and failure to act have caused Ms. Lorelli to suffer humiliation, embarrassment and emotional and physical distress, including, without limitation, shock, anger, frustration, panic, fear, and anxiety.

72.   This increased anxiety has resulted in Ms. Lorelli's loss of sleep from 2018 to the present. Ms. Lorelli's increased anxiety and loss of sleep are a result of the emotional and physical distress caused by Defendants, which continues to this day.

**IV. CAUSES OF ACTION Count I (42 U.S.C. § 1983)**

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ.**

73.   Paragraphs 1 through 75 are realleged and incorporated herein by reference.

74.   The actions of all Defendants were sufficiently pervasive and severe so as to create a subject the Plaintiff to a deprivation of rights, privileges, and/or immunities secured by the Constitution and laws.

75.   The conduct complained of was committed by the Corporate Defendants and Law Firm Defendants acting under the color of law, that being, the House Rules.

76.   The Corporate Defendants and Law Firm Defendants utilized the House Rules to deprive the Plaintiff of her rights, privileges and/or immunities secured by the Constitution or laws of the United States in that they are seeking to deprive Plaintiff of her right to select the area in which she lives and said Defendants are further attempting to deprive Plaintiff of the property in which she owns, as well as the value of same through their unlawful conduct.

77.   Such conduct constitutes a deprivation of Plaintiff's federal constitutional rights.

78.   The Corporate Defendants and Law firm Defendants conduct was intentional, grossly negligent, and/or amounted to reckless or callous indifference with respect to Plaintiff's rights to live in the housing of her choice.

79.       The Corporate Defendants and Law Firm Defendants tolerated and/or

facilitated this pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

80.    The Corporate Defendants and Law Firm Defendants tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a violation of Plaintiffs rights to make and enforce contracts on an equal basis regardless of disability under 42 U.S.C. § 1983.

## Count II (42 U.S.C. § 3601)

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

81.    Paragraphs 1 through 80 are realleged and incorporated herein by reference.
82.    The actions of all Defendants were sufficiently pervasive as to violate Plaintiff's rights to fair housing pursuant to 42 USC § 3601.

83.    Defendant Fiorentino openly commented regarding his disdain for the Plaintiff's continued residence at the Premises and that he did not want her to continue residing there as he believed she should reside in a place for people with mental disabilities.

84.    The Corporate Defendants continued to issue fines, violations, penalties and fees against Plaintiff unlawfully in an attempt to have her vacate the Premises and/or to forcibly remove her from the Premises in violations of her rights under the Fair Housing Act.

85.    The Law Firm Defendants engaged in litigation to effectuate the deprivation of Plaintiff's rights under the Fair Housing Act.

86.    All Defendants tolerated and/or facilitated this pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

87.    Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to constitute violation of Plaintiff's rights under the Fair Housing Act.

88.    Defendants' tolerance and/or facilitation of said acts demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

### Count III (42 U.S.C. § 3604)

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

89.    Paragraphs 1 through 88 are realleged and incorporated herein by reference.

90.    All Defendants discriminated against Plaintiff in the terms, conditions, or privileges of the rental of her apartment.

91.    Defendant Fiorentino discriminated against Plaintiff on the basis of her handicap.

92.    The Corporate Defendants discriminated against Plaintiff by unlawfully fining her and attempting to unlawfully remove her from her lawfully owned property.

93.    The Law Firm Defendants discriminated against Plaintiff by initiating, continuing and protracting litigation against Plaintiff in an attempt to have her unlawfully removed from the Premises in which she owns and to be further deprived of her property.

94.    All Defendants tolerated and facilitated a pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

95.    All Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on race in violation of Plaintiff's rights, as protected by the Fair Housing Act, 42 U.S.C. § 3604(b) and (f). Defendants subjected Ms. Lorelli to different terms and conditions on the basis of her disability.

96.    All Defendants' tolerance and/or facilitation of said acts demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

## Count IV (42 U.S.C. § 3613)

### AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO

97.     Paragraphs 1 through 96 are realleged and incorporated herein by reference.

98.     All Defendants discriminated against Plaintiff in the terms, conditions, or privileges of the rental of her apartment.

99.     All Defendants tolerated and facilitated a pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

100.    Defendant Fiorentino continued discriminatory housing practices against the Plaintiff by continually calling the police on her, making derogatory comments about her, and testifying at Trial in an attempt to evict her on the basis of her disability.

101.    The Corporate Defendants engaged in said discriminatory housing practices and engaged in litigation seeking to evict Plaintiff on the basis of her disability.

102.    The Law Firm Defendants engaged in litigation seeking to evict Plaintiff on the basis of her disability.

103.    All Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on discrimination in violation of Plaintiff's rights, as protected by the Fair Housing Act.

104.    All Defendants subjected Ms. Lorelli to different terms and conditions on the basis of her disability.

105.    All Defendants' tolerance and/or facilitation of said acts demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

**Count V (42 U.S.C. § 3617)**

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

106.    Paragraphs 1 through 105 are realleged and incorporated herein by reference.

107.    All Defendants coerced, intimidated, threatened, and/or interfered with the Plaintiff's exercise and/or enjoyment of the use of her property.

108.    Defendant Fiorentino interfered with Plaintiff's enjoyment in that he continued a pattern of conduct and attempted to force Plaintiff from her home due to her disability.

109.    The Corporate Defendants interfered with Plaintiff's enjoyment of her home in that they attempted to force Plaintiff from her residence, unlawfully, and deprive her of both her legal right to her property and the value of same.

110.    The Law Firm Defendants interfered with Plaintiff's enjoyment of her home in that they attempted to force Plaintiff from her residence by bad faith litigation based on discrimination.

111.    All Defendants tolerated and/or facilitated the pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

112.    Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment in violation of Plaintiffs rights, as protected by the Fair Housing Act, 42 U.S.C. § 3617. Ms. Lorelli's right to use and enjoy his home, after the assertion of her civil rights, was unlawfully interfered with on the basis of her disability.

113.    Defendants' actions and failure to act demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

## Count VI (New York Executive Law§ 296(5))

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY**

114.    Paragraphs 1 through 113 are realleged and incorporated herein by reference.

115.    The Corporate Defendants discriminated against the Plaintiff on the basis of her disability in connection with the conditions and privileges related to her housing.

116.    The Corporate Defendants tolerated and/or facilitated the pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

117.    The Corporate Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a violation of Plaintiffs rights, as protected by the New York State Human Rights Law, New York Executive Law § 296(5), Defendants subjected Ms. Lorelli to different conditions or privileges of housing on the basis of disability.

118.    The Corporate Defendants' actions and failure to act demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

## Count VII (New York Executive Law§ 296(6))

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

119.    Paragraphs 1 through 118 are realleged and incorporated herein by reference.

120.    All Defendants tolerated and/or facilitated the pattern of discriminatory conduct, despite repeated specific requests to investigate and intervene on behalf of Ms. Lorelli.

121.    All Defendants' tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on race in violation of Plaintiffs rights, as protected by the New York State Human Rights Law, New York Executive Law§ 296(6),

Defendants aided and abetted unlawful discrimination against Ms. Lorelli on the basis of disability.

122.    Defendants' actions and failure to act demonstrate a willful and gross disregard for the known rights of Ms. Lorelli.

### Count XII (Common Law Negligent Infliction of Emotional Distress)

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

123.    Paragraphs 1 through 122 are realleged and incorporated herein by reference.

124.    The Corporate Defendants breached their duty to Plaintiff as Landlord which required to keep Plaintiff free from and unreasonably endangerment for her safety and further breached the duty in failing to keep her free from harassment, discrimination, and fear of homelessness and violence from the neighbors, causing Plaintiff to fear for her safety while residing in the Premises due to the conduct of all Defendants herein.

125.    The Law Firm Defendants breached their duty not to engage in discrimination in the practice of law and continued with frivolous litigation in bad faith in an attempt to evict Plaintiff on the basis of her disability, causing harm to Plaintiff.

126.    Defendant Fiorentino breached his duty to Plaintiff in that he engaged in extreme and outrageous conduct against Plaintiff in violation of her rights by making derogatory comments to her on the basis of her disability and continuing with frivolous litigation and disparaging comments against Plaintiff in an attempt to have her evicted on the basis of her disability, causing harm to Plaintiff.

127.    The Corporate Defendants and/or Law Firm Defendants' failure to investigate Mr. Fiorentino's violent threats and continued harassment toward Ms. Lorelli and ultimately to intervene on Ms. Lorelli's behalf, constituted a breach of that duty.

128.    The Corporate and/or Law Firm Defendants' failure to investigate and intervene in response to Mr. Fiorentino's violent threats toward Ms. Lorelli constitutes extreme and outrageous conduct and caused Ms. Lorelli severe emotional distress.

129.    The Corporate and/or Law Firm Defendants' failure to investigate and intervene upon receiving notice of Mr. Fiorentino's egregious and illegal conduct, which included explicit threats of violence, and an indecent in which Ms. Lorelli was physically assaulted, placed Ms. Lorelli in imminent danger of physical harm, unreasonably endangered his physical safety, and caused him to fear for her physical safety.

### Count IX (Intentional Infliction of Emotional Distress)

**AS TO DEFENDANTS WOODLANDS APARTMENT CORP., GREENVIEW PROPERTIES, INC., BOARD OF DIRECTORS OF THE WOODLANDS A PRIVATE COMMUNITY, TAYLOR ELDRIDGE & ENDRES, P.C., DAVID ELDRIDGE, ESQ., JENNINE B. CULLEN, ESQ., AND SHAREEF FIORENTINO**

130.    Paragraphs 1 through 129 are realleged and incorporated herein by reference.

131.    The Corporate Defendants engaged in extreme and outrageous conduct against Plaintiff by attempting to evict her and by continuing harassment and physical harm by the neighbors, despite knowledge of same.

132.    The Corporate Defendants breached their duty to Plaintiff as Landlord which required to keep Plaintiff free from and unreasonably endangerment for her safety and further breached the duty in failing to keep her free from harassment, discrimination, and fear of homelessness and violence from the neighbors, causing Plaintiff to fear for her safety while residing in the Premises due to the conduct of all Defendants herein.

133.    This was done by the Corporate Defendants with a intent to cause, a substantial probability of causing severe emotional distress. There was a causal connection between the conduct on behalf of the Corporate Defendants and the resulting severe emotional distress incurred by Plaintiff.

134.     The Law Firm Defendants engaged in extreme and outrageous conduct in the form of bad faith litigation with the intent to cause and/or with a substantial probability of causing severe emotional distress to Plaintiff.

135.     The conduct of the Law Firm Defendants was causally connected to Plaintiff's injuries and caused Plaintiff severe emotional distress.

136.     Defendant Fiorentino engaged in extreme and outrageous conduct with the intent to cause and/or with a substantial probability of causing severe emtoinal distress and there is causal connection between Defendant Fiorentino's conduct and the injury and the Plaintiff, in fact, suffered severe emotional distress as a result of Defendant Fiorentino's conduct detailed herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a.     a declaratory judgment finding that the actions of all Defendants violated 42 U.S.C. § 1983, 42 U.S.C. § 3601, 42 U.S.C. § 3602, 42 U.S.C. § 3604, 42 U.S.C. § 3613, and 42 U.S.C. § 3617; New York Executive Law;

b.     a declaratory judgment finding that the actions of all Defendants constitute negligent infliction of emotional distress;

c.     a declaratory judgment finding that the actions of all Defendants constitute intentional infliction of emotional distress;

d.     a permanent injunction prohibiting all Defendants from continuing to engage in the illegally discriminatory conduct alleged in this Complaint, including, without limitation, ordering Defendants to take actions or steps reasonably calculated to resolve any and all complaints of neighbor-on-neighbor harassment on the basis of disability, or any other ground prohibited by the Fair Housing Act of 1968;

e.     removal of all fines, penalties, and legal fees unlawfully assessed by the Defendants as against the Plaintiff;

f.  compensatory damages in the amount of approximately $20,00.00 to fully compensate Plaintiff for over payment of maintenance from the period of 2018-2024;

g.  Compensatory damages in the amount of approximately $50,000.00 to fully compensate Plaintiff for the payment of maintenance from 2018-2024;

h.  Compensatory damages in the amount of approximately $375,000.00 to fully compensate Plaintiff for the value of the her unit;

i.  compensatory damages in an unspecified amount that would fully compensate the Plaintiff for the loss of enjoyment, humiliation, embarrassment, physical harm, emotional distress and mental anguish caused by Defendants' violations of the law;

j.  relocation costs in the amount not less than $250,000.00.

k.  punitive damages in an amount that would punish Defendants for the willful, wanton, and reckless misconduct and indifference as alleged in this Complaint and that would effectively deter the Defendants from future discriminatory behavior;

l.  reasonable attorneys' fees and costs; and

l.  all other relief deemed just and equitable by the Court.

## DEMAND FOR JURY TRIAL

Trial by jury is demanded on all issues.

Dated: February 14, 2025
        Bay Shore, New York

By     *Sarah G Atomer*

THE GITOMER LAW GROUP, P.C. SARAH R. GITOMER, ESQ.
1079 HYMAN AVENUE
BAY SHORE, NEW YORK
11706 Tel: 6 3 1 - 4 3 6 - 1 1 7 7
E-mail: sarah@gitomerlawgroup.com