UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PATRICIA LORELLI,

*Plaintiff,*

– against –

WOODLANDS APARTMENT CORP.;
GREENVIEW PROPERTIES, INC.; BOARD OF
DIRECTORS OF THE WOODLANDS; TAYLOR
ELDRIDGE & ENDRES, P.C.; DAVID
ELDRIDGE, ESQ.; JENNINE CULLEN, ESQ.;
SHAREEF FIORENTINO,

*Defendants.*

**MEMORANDUM & ORDER**
24-cv-05606 (NCM) (ARL)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Patricia Lorelli, a leaseholder in a cooperative housing complex, brings this action against the corporate owner of the complex, the maintenance company, the Board of Directors, and a fellow leaseholder. *See generally* Am. Compl. ("AC"), ECF No. 22. Plaintiff asserts nine causes of action, including five federal civil rights claims sounding in discrimination arising out of events concerning her residency at the Woodlands Apartment Corporation. *See* AC pp. 18–26, ¶¶ 73–136. Before the Court are three motions to dismiss brought by (1) Woodlands Apartment Corp., Greenview Properties, Inc., and Board of Directors of the Woodlands Apartment Corp. (collectively "Woodlands Defendants"); (2) Taylor, Eldridge & Endres, P.C., David Eldrige, Esq., and Jennine B. Cullen, Esq. (collectively the "Law Firm Defendants"); and (3) Shareef

1

Fiorentino. Plaintiff opposes each motion.[1] For the reasons stated herein, defendants' motions to dismiss are **GRANTED**.

## BACKGROUND

### I.      Factual Background

In October 2002, plaintiff purchased shares in the cooperative building owned by Woodlands Apartment Corp. ("Woodlands") located at 75 Finch Lane, Islip, New York 1175 ("premises"). AC ¶¶ 7, 38. Plaintiff has a proprietary lease at Woodlands, which is operated by the Board of Directors (the "Board"). AC ¶ 40, p. 15, ¶ 73. Plaintiff maintained two gardens adjacent to her property from 2002 through 2024. *See* AC ¶ 11. In 2018, the Board hired a new management company, Greenview Properties Inc. ("Greenview"), to manage Woodlands. AC ¶¶ 9, 50. That year, Shareef Fiorentino moved into the unit directly above plaintiff's unit. AC ¶¶ 44, 50. Plaintiff has a mental disability for which she receives treatment. AC ¶ 37.

*A. First Holdover Proceeding*

Coinciding with Greenview's start, plaintiff alleges that she "began to experience discrimination against her for her disability in the form of comments from neighbors." AC ¶ 10. For example, when plaintiff watered her garden, neighbors commented "oh

---

[1]      The Court hereinafter refers to Woodlands Defendants' Memorandum of Law in Support of the Woodlands Motion to Dismiss to the Amended Complaint, ECF No. 49, as "Woodlands Motion" and Reply Memorandum in Further Support, ECF No. 53, as "Woodlands Reply"; the Law Firm Defendants' Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, ECF No. 56, as "LF Motion" and Memorandum of Law in Further Support of its Motion to Dismiss the Amended Complaint, ECF No. 59, as "LF Reply"; and Fiorentino's Memorandum of Law in Support of Defendant Shareef Fiorentino's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 43, as "Fiorentino Motion" and Reply Memorandum of Law in Further Support, ECF No. 46, as "Fiorentino Reply"; and, plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 52, as the "Opposition."

crazy's out." AC ¶ 10. Plaintiff alleges that fellow leaseholder Fiorentino also made discriminatory comments against plaintiff outside of her apartment. AC ¶ 51.

In December 2022, Woodlands, by and through their counsel, Taylor, Eldridge, and Enders, P.C., commenced a holdover proceeding against plaintiff in Suffolk County District Court. AC ¶¶ 3, 53. Plaintiff was never served a copy of the holdover petition. AC ¶ 53. Woodlands Defendants obtained a default judgment against plaintiff in February 2023. AC ¶ 53. In October 2023, the judgment was vacated, and the parties entered into a stipulation which provided that plaintiff's possession of the property would be reinstated upon compliance with certain terms. AC ¶ 54; *see also* Gitomer Decl. Ex. H ("Stipulation of Settlement" or "Stipulation") 2–6, [2] ECF 51-8. [3] The Stipulation was set to expire on May 1, 2024. AC ¶ 54. Plaintiff alleges she duly complied with the terms of the Stipulation. AC ¶ 19.

*B. Second Holdover Proceeding*

In November 2023, Taylor, Eldridge, and Enders, P.C., issued a violation of the Stipulation based on complaints of excess noise from plaintiff's apartment (hereinafter "November 2023 incident"). AC ¶ 20, p. 12, ¶ 55. In January 2024, another violation was issued after the fire department responded to reports of smoke coming from plaintiff's apartment, which plaintiff alleges was caused by cooking food on her stove (hereinafter "January 2024 incident"). AC ¶ 20, p. 12, ¶ 55. Plaintiff alleges neither incident was a

---

[2] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[3] In deciding a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFAlco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

violation of her lease. AC p. 12, ¶ 55. In an email dated January 17, 2024, Fiorentino wrote to Greenview stating that plaintiff should be moved into a home for people with disabilities. AC ¶ 32; *See also* Gitomer Decl. Ex. L ("Fiorentino Email") 2, ECF No. 51-12.

Plaintiff alleges that she continued to pay monthly maintenance fees. AC ¶ 24. However, on March 7, 2024, a warrant of eviction was issued against plaintiff. AC ¶ 24. Despite the warrant of eviction, plaintiff's February maintenance fee payment was accepted and cashed on March 14, 2024. AC ¶ 24. Plaintiff alleges Woodlands overcharged plaintiff on her maintenance fees by $200 per month as a form of harassment. AC p. 14, ¶ 67.

In May 2024, plaintiff was hospitalized for health issues in connection with her disability. AC ¶ 11. During plaintiff's hospitalization, Fiorentino, with express authorization from Greenview, began utilizing the front garden for his personal use. AC ¶ 11. When plaintiff complained, Ms. Jennine Cullen, an attorney at Taylor, Eldridge, and Enders, P.C., directed plaintiff not to touch the front garden, because it was "common property." AC ¶ 11. Plaintiff also alleges that Fiorentino looked through her window to observe plaintiff, AC ¶ 12, and various neighbors took photos and videos of plaintiff and vandalized her property, AC ¶¶ 12–13. She further alleges Fiorentino repeatedly called the police on plaintiff, AC p. 12, ¶ 57, and made verbal and physical threats to plaintiff, AC p. 12, ¶ 58. Plaintiff alleges she reported these incidents to Woodlands Defendants to no avail. AC ¶¶ 26, 29. Plaintiff alleges "a neighbor physically assaulted" her "on the premises" but Woodlands Defendants "did nothing about this incident." AC ¶ 14.

Later in 2024, the holdover proceeding against plaintiff moved to trial. *See* AC ¶¶ 3, 5, 33. Fiorentino testified for Woodlands Defendants. AC ¶¶ 31–32. During his testimony, Fiorentino testified about the January 2024 incident. *See* AC ¶ 31. Fiorentino

also testified that his smoke alarm was not working at the time. AC ¶¶ 21, 31. Even though a working fire alarm is required by the lease, plaintiff alleges Fiorentino was not reprimanded for this violation. AC ¶ 22, p. 12, ¶ 58. Fiorentino further testified that plaintiff should "move into a home for people who have disabilities," AC ¶¶ 32–33, p. 13, ¶ 59, the same sentiment that was asserted in his January 17, 2024 email, AC ¶ 32. Plaintiff currently resides on the premises. *See* AC ¶ 37. An appeal of the holdover proceedings is currently pending before the Appellate Term, Second Department under Docket No. 2024-01029. AC ¶ 3.

## II.     Procedural History

Plaintiff filed the instant suit on August 12, 2024, *see* Compl., ECF No. 1, and amended her complaint on February 14, 2025, *see* AC. Plaintiff brings claims under 42 U.S.C. § 1983 (Count I) [4], §§ 3601, 3604, 3613, and 3617 of the Fair Housing Act ("FHA") (Counts II–V), and Sections 296(5) and 296(6) of the New York State Human Rights Law ("NYSHRL") (Counts VI and VII), as well as common law claims for negligent infliction of emotional distress ("NIED") (Count VIII) [5] and intentional infliction of emotional distress ("IIED") (Count IX). Counts I–IX are alleged against Woodlands Defendants. Counts I–V, and VII–IX are alleged against Law Firm Defendants. Counts II–V, VII–IX are alleged against Fiorentino. *See* AC pp. 18–26, ¶¶ 73–136. Woodlands Defendants, Law Firm Defendants, and Fiorentino separately move to dismiss plaintiff's action in its entirety. *See* Woodlands Mot.; LF Mot.; Fiorentino Mot. Plaintiff opposes. *See* Opp'n.

---

[4]     Plaintiff seeks to withdraw her claim under 42 U.S.C. § 1983. *See* Opp'n 9 n.1. Therefore, this claim is dismissed.

[5]     The Amended Complaint labels this cause of action as Count XII. Throughout this order, the Court refers to the cause of action for NIED as Count VIII.

**LEGAL STANDARD**

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). [6] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

**DISCUSSION**

All three motions ask the Court to dismiss this suit in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Woodlands Mot. 6–7; LF Mot. 6; Fiorentino Mot. 5. Law Firm Defendants additionally argue that the suit against them is predicated on services performed in the scope of their legal representation of Woodlands Defendants in the state court holdover proceeding, and thus the claims against them should be dismissed because "the purported unlawful action by the Law Firm Defendants

---

[6]     Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

6

is simply litigation."[7] LF Mot. 10–11. Woodlands Defendants also argue that plaintiff should be denied the opportunity to file a second amended complaint. Woodlands Mot. 19–20. The Court takes up the parties' arguments.

## I.    42 U.S.C. § 3601 (Count II)

All defendants argue there is no private right of action under Section 3601 of the FHA. Section 3601 provides: "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Section 3601 "is a policy declaration and does not confer a private right of action." *Laramore v. Quality Residence, LLC*, No. 22-cv-02370, 2024 WL 1162051, at *2 (D. Minn. Feb. 29, 2024), *aff'd,* No. 24-1556, 2024 WL 4217025 (8th Cir. May 10, 2024). Thus, plaintiff's claim under Section 3601 is dismissed.

## II.    42 U.S.C. § 3604 (Count III)

Plaintiff next brings a cause of action for violations of subsections (b) and (f) of 42 U.S.C. § 3604.

### A.  Section 3604(b)

Section 3604 of the FHA applies to discrimination in post-acquisition housing related services. *See Davis v. City of New York*, 902 F. Supp. 2d 405, 436 (S.D.N.Y. 2012).

---

[7]    Law Firm Defendants make two additional arguments: (1) plaintiff fails to allege any specific facts as to attorneys Jennine B. Cullen and J. David Eldridge to warrant individual liability. LF Reply 2. And relatedly, (2) plaintiff's action fails to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure because plaintiff "pleads predominantly as against '[d]efendants' as a whole" and "conflate[s] allegations against '[d]efendants'." LF Mot. 8, 17. As discussed below, the Court finds that plaintiff's allegations against Law Firm Defendants arise from actions taken in the scope of their representation of Woodlands Defendants, and there is no allegation to support an inference of fraud, collusion, or a malicious or tortious act on their part. *See infra* II.B.ii. Therefore, Law Firm Defendants are dismissed from this action, and the Court does not reach these additional arguments.

Section 3604(b) prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith" because of a protected characteristic. 42 U.S.C. § 3604(b).

Plaintiff's claim fails because she does not allege membership in a protected category covered by Section 3604(b). Specifically, Section 3604(b) prohibits discrimination "because of race, color, religion, sex, familial status or national origin." 42 U.S.C. § 3604(b). Plaintiff does not allege that she is a member of any of these protected classes. *See generally A*C. Although plaintiff alleges that she is disabled, AC ¶ 37, disability is not one of the protected categories under Section 3604(b). *See Ingraham v. Red Carpet Hous. Corp.*, No. 17-cv-01076, 2017 WL 5152343, at *4 (N.D.N.Y. Oct. 19, 2017) ("The Fair Housing Act prohibits discrimination on the basis of protected categories, which include race, color, national origin, religion, familial status, or gender. However, . . . plaintiffs do not identify themselves in any of these protected categories or allege that any discrimination occurred because of these protected categories.") (citing 42 U.S.C. § 3604(b)).

Accordingly, plaintiff's Section 3604(b) claim is dismissed.

### B. Section 3604(f)

Section 3604(f)(1) of the FHA makes it unlawful to discriminate against individuals with disabilities "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Section 3604(f)(2) makes it "unlawful to discriminate against individuals with disabilities in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." *Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 344 (E.D.N.Y. 2005)

(quoting 42 U.S.C. § 3604(f)(2)). Three theories of liability are cognizable under the FHA: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make a reasonable accommodation. *See Tanner v. Rochdale Vill. Inc.*, No. 23-cv-09090, 2024 WL 5186726, at *3 (E.D.N.Y. Dec. 20, 2024). Plaintiff argues all three theories are satisfied here because defendants engaged in discriminatory housing practices on the basis of her disability in violation of the FHA. Opp'n 21.

### i. Woodlands Defendants

Plaintiff claims Woodlands Defendants are liable under each theory of discrimination. Opp'n 20–24; *see also* AC ¶¶ 92–96. Woodlands Defendants contend that plaintiff's allegations under Section 3604(f) are entirely conclusory. Woodlands Mot. 7–8.

### a. Disparate Treatment

Disparate treatment claims under the FHA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Thomas v. Genova*, 698 F. Supp. 3d 493, 528 (E.D.N.Y. 2023), *aff'd as amended*, No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025) (summary order). Under this framework, plaintiff must establish a prima facie case of discrimination by showing "(1) [she is a] member[] of a protected class; (2) the defendants took adverse action against [her]; and (3) the adverse action took place under circumstances giving rise to an inference of discrimination." *Smith v. Davis*, No. 22-cv-01202, 2023 WL 5019432, at *7 (N.D.N.Y. Mar. 28, 2023), *report and recommendation adopted*, 2023 WL 4346961 (July 5, 2023).

Once plaintiff establishes a prima facie case, "the burden shifts to the defendants to produce a legitimate, non-discriminatory reason for their actions. If the defendants make such a showing, the burden shifts back to the plaintiff to demonstrate that

defendants' proffered reason is pretextual, and that discrimination was the real reason for the defendants' actions." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 585–86 (S.D.N.Y. 2012).

Here, plaintiff alleges she has a mental disability—a protected characteristic under Section 3604(f). *See* AC ¶ 37; *see, e.g.*, *Step By Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 133 (N.D.N.Y. 2016) (finding substantial likelihood of success on the merits of Section 3604(f) disability discrimination against nonprofit group providing outpatient services for clients with mental disabilities). She alleges that Woodlands Defendants' attempt to forcibly remove her from her property by bringing a holdover proceeding against her and making her property "unavailable" was motivated by an intent to discriminate against her on the basis of her disability. *See* Opp'n 18, 20–21. Eviction proceedings can constitute an "adverse action" under the FHA. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 266–67 (E.D.N.Y. 2009). Fatal to plaintiff's claim, however, is her failure to provide any facts suggesting "an inference of discriminatory motivation" in commencing the holdover proceeding. *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 376–77 (D. Conn. 2019) ("[A] plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was a member of a protected class, suffered relevant adverse treatment, and can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.") (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Plaintiff also maintains that because of her disability she was discriminated against "in the terms, conditions, or privileges . . . or in the provision of services or facilities" when she was assessed fines and fees and issued violations and penalties. Opp'n 20–21. Plaintiff asserts Woodlands Defendants have been overcharging her on maintenance fees by $200

per month, AC p. 14, ¶ 67, and are unlawfully assessing other fines, fees, and attorney fees, AC p. 14, ¶ 68. Relatedly, she claims Woodlands Defendants were motivated by discriminatory animus when they issued two violations against plaintiff in November 2023 and January 2024. *See* AC ¶ 33. But for these two violations, she alleges, a second holdover proceeding would not have commenced. *See* AC ¶ 33. Again, plaintiff makes a conclusory assertion that these events must have been motivated by an intent to discriminate against her because of her disability, *see* AC ¶ 23, but there are no facts showing a relationship between her disability and Woodlands Defendants' motivation to initiate the holdover proceeding or assess fines and fees. In other words, the "causal connection" is missing. *Tellock v. Davis*, No. 02-cv-04311, 2002 WL 31433589, at *6 (E.D.N.Y. Oct. 31, 2002) ("[A]lthough [plaintiff] alleges that [the managing agent of the apartment building] used racially charged language, he fails to establish that there was any causal connection between this language and defendants' attempt to evict him. . . . In these circumstances, any possible finding of racial discrimination suggested by [the managing agent's] alleged statements, which, if true, the Court certainly does not condone, is undermined by [plaintiff's] four previous lease renewals, his seven-year occupancy of the apartment, without racial incident, and the [managing agent's] repeated offers to once again renew [plaintiff]'s lease."), *aff'd*, 84 F. App'x 109 (2d Cir. 2003) (summary order). Thus, plaintiff has not plausibly alleged a disparate treatment or intentional discrimination theory.

### b. Disparate Impact

Plaintiff's claim under a disparate impact theory is likewise unavailing. Discriminatory housing practices may be challenged under a disparate impact theory by showing "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly

adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 392 (S.D.N.Y. 2012). Generally, a plaintiff must show that disparity between two groups exists, usually by relying on "statistical, quantitative evidence" or "offer[ing] proof that . . . permits the court to make an assessment that there is a qualitatively disproportionate impact." *Step By Step, Inc.*, 176 F. Supp. 3d at 133. Here, plaintiff asserts the cooperative by-laws were applied one way to her because of her disability and differently to other cooperative unit residents, but grounds it on only one example. AC ¶¶ 21–22. During Fiorentino's testimony at plaintiff's holdover proceeding, he stated that his smoke alarm was not working, a violation of the terms of the proprietary lease. AC ¶¶ 21–22. Yet, he was not issued a violation, although plaintiff was issued a violation for a smoke alarm related incident. AC pp. 12–13, ¶ 58. This example alone, however, does not show Woodlands Defendants' enforcement of the proprietary lease "predictably results" in disability discrimination. *Hous. Rts. Initiative v. Compass, Inc.*, No. 21-cv-02221, 2023 WL 1993696, at *21 (S.D.N.Y. Feb. 14, 2023) ("[A]n FHA disparate-impact prima facie case does not require concrete evidence that a discriminatory harm has *already* materialized and can be made out when challenged conduct would predictably result[] in a discriminatory outcome" in the future). Thus, plaintiff has failed to allege that a neutral policy has a disproportionate impact on people with disabilities.

c.  Reasonable Accommodation

Finally, to make a claim based on the denial of a reasonable accommodation under the FHA, a plaintiff must establish that: (1) she is disabled within the meaning of the FHA; (2) defendant knew or should have known this fact; (3) an accommodation may be

necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) such accommodation is reasonable; and (5) defendant refused to make the requested accommodation. *Martinez by Martinez v. Lexington Gardens Assocs.*, 336 F. Supp. 3d 270, 279 (S.D.N.Y. 2018). The reasonable accommodation test is made operative once a request is made. *See Taylor v. Harbour Poine Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) ("To make a prima facie showing in support of her failure to accommodate claim, [plaintiff] was required to give [defendants] an opportunity to accommodate her."). Plaintiff only mentions her request for a reasonable accommodation in a single sentence in her complaint: "Ms. Lorelli requested a reasonable accommodation in the form of communications through counsel for all invoices and other related matters." AC p. 13–14, ¶ 66. This conclusory assertion, devoid of any factual allegations to support it, does not allow for a reasonable inference that defendant knew or should have known of plaintiff's disability, and importantly, that this accommodation was necessary for plaintiff to be able to use and enjoy the dwelling. Indeed, it is unclear how requesting invoices be sent to counsel was necessary for plaintiff to have an equal opportunity to use her apartment. Thus, plaintiff has not stated a claim for failure to make a reasonable accommodation.

### d. Vicarious Liability

Plaintiff raises another avenue of Woodlands Defendants' liability pursuant to Section 3604(f). Specifically, plaintiff argues that at "all times" described in the complaint, "all [d]efendants acted as an agent and/or employee of Woodlands Apartment Corp." AC p. 17, ¶ 67. And thus, Woodlands Defendants can be held liable for the actions of others. This theory seems to be based on plaintiff's allegation that Fiorentino discriminated against plaintiff based on her disability, and that other leaseholders similarly harassed plaintiff. AC ¶¶ 10–14, 32.

"[I]t is well established that the [FHA] provides for vicarious liability" in accordance with "traditional vicarious liability rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Indeed, the FHA prohibits discriminatory housing practices by a housing provider's "agents and employees." *Glover v. Jones*, 522 F. Supp. 2d 496, 506–07 (W.D.N.Y. 2007) (holding landlord can be vicariously liable under the FHA for the actions of an agent acting within and outside the scope of his employment); *see* 24 C.F.R. § 100.7(b) ("A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law."). Moreover, housing providers may be liable for "[f]ailing to take prompt action to correct a discriminatory housing practice by a third-party, where the [housing provider] knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7(a)(1)(iii). "The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any legal responsibility the person may have with respect to the conduct of such third-party." 24 C.F.R. § 100.7(a)(1)(iii).

Here, plaintiff alleges ongoing discrimination by her neighbors. For example, on at least one occasion while watering her lawn, a neighbor stated, "oh crazy's out." AC ¶ 10. Additionally, Fiorentino stated in an email that plaintiff should reside in a home for disabled people. AC ¶ 32. She alleges suffering a "litany of abuse . . . in the form of verbal assaults, violent threats and other discriminatory conduct that has lasted for a period of six years." AC ¶ 12. These instances include neighbors filming and photographing plaintiff or peering through her window, vandalism, and one neighbor who physically assaulted plaintiff. AC ¶¶ 12–14. Despite asking her neighbors to cease their conduct, plaintiff

alleges the treatment continued. AC ¶ 12. Plaintiff reported these instances to the police to no avail. AC ¶ 14. More importantly, plaintiff sought relief from Greenview and the Board, who she alleges failed to investigate and intervene. AC ¶¶ 14–15, 26–29.

However, plaintiff fails to sufficiently allege a basis to impute the harassment committed by leaseholders to Woodlands Defendants. That is because she has not alleged that any leaseholder was defendants' agent or that Woodlands Defendants "exercised substantial control over the context in which the harassment occurs and over the [other leaseholders]." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 75 (2d Cir. 2021). First, there is no allegation that Fiorentino or any of the neighbors are on the Board or otherwise employees of Woodlands Defendants. *See Glover*, 522 F. Supp. 2d at 507 (holding landlord can be vicariously liable under the FHA for the actions of an agent acting within and outside the scope of his employment). Nor does plaintiff plead facts that create a plausible inference that Woodlands Defendants exercised "supervisory control over both the premises and the harassing tenants" to impute the conduct of her neighbors onto the landlord. *Francis*, 992 F.3d at 77. Further, there are no allegations that Greenview and the Board possessed the authority and duty to investigate allegations of discrimination and intervene in disputes between neighbors. For example, plaintiff does not point to any provision in her proprietary lease or Board by-laws establishing a duty for defendants to investigate and intervene in personal disputes between tenants, or allege that there is a history of defendants intervening in similar situations, but failing to do so here. *See Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("[I]t is well settled that an inference of discrimination can be drawn when similarly situated individuals were treated differently."). With no factual basis to infer that Woodlands Defendants had more than the typical arms-length relationship between landlord and

15

tenant, the Court cannot presume defendants had control such that conduct of a third party can be imputed on them.

*    *    *

Accordingly, plaintiff's claim under Section 3604(f) against Woodlands Defendants fails to state a claim for relief, and the claim is dismissed. Plaintiff is granted leave to amend this claim against Woodlands Defendants.

### ii. Law Firm Defendants

Plaintiff alleges Law Firm Defendants violated Section 3604(f) by "initiating, continuing, and protracting litigation against [p]laintiff in an attempt to have her unlawfully removed from" her property. AC ¶ 93. Law Firm Defendants argue they cannot be held liable for conduct that falls within the scope of their duties as attorneys and that the FHA is not applicable to them. *See* LF Mot. 10–11, 13–15.

Generally, attorneys may not be held liable for attorney services provided to a client. *Ottah v. Bracewell LLP*, No. 21-cv-00455, 2021 WL 5910065, at *10 (S.D.N.Y. Dec. 10, 2021) ("[U]nder New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he did something either tortious in character or beyond the scope of his honorable employment.") (citing *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977). This bar on liability for services rendered within the scope of employment applies not only to individual attorneys, but to law firms as well. *See id*. Attorneys are not entirely immune from suit and may be liable for services performed on behalf of a client if there is a showing of fraud, collusion, or a malicious or tortious act. *See Barsoumian v. Williams*, 29 F. Supp. 3d 303, 316 (W.D.N.Y. 2014) (permitting attorney liability "for

injuries caused by services performed on behalf of a client or advice offered to that client" where the attorney made misrepresentations to a client).

Here, plaintiff alleges Law Firm Defendants initiated or continued their representation of Woodlands Defendants in the holdover proceeding, which itself was initiated to target plaintiff on the basis of her disability. AC ¶¶ 3, 5, 15. While her briefing is not entirely clear on this point, it appears plaintiff also alleges that Law Firm Defendants either enabled or authorized the unequal enforcement of lease provisions against her, resulting in the issuance of violations. AC ¶¶ 32–33; *see* Opp'n 22. Plaintiff additionally pleads that in or around May 2024, Cullen"directed" plaintiff to "not touch the front garden"—that plaintiff tended to for approximately 22 years—on the grounds that it is common property, and thereby deprived her of her property. *See* AC ¶ 11.

Plaintiff's allegations concerning the alleged violative conduct stems from Law Firm Defendants' representation of Woodlands Defendants. Plaintiff does not include any allegations that support a reasonable inference that Law Firm Defendants' or attorney Cullen's conduct was beyond the scope of their employment or independently tortious in character. Indeed, Law Firm Defendants' representation of Woodlands Defendants in the holdover proceedings was within the scope of their employment as attorneys, and plaintiff's complaint provides no allegations that would support otherwise. The complaint is also devoid of allegations that would support that Cullen informing plaintiff that the garden was common property was outside the scope of her representation of Woodlands Defendants or otherwise fraudulent.

Accordingly, plaintiff's Section 3604(f) claim against Law Firm Defendants is dismissed.

iii. Defendant Fiorentino

17

Plaintiff's Section 3604(f) claim is also dismissed against Fiorentino because, as a fellow leaseholder, he does not have the authority to sell or rent, enforce the "terms, conditions, or privileges" of the proprietary lease, or make "provision[s] of services or facilities in connection with" the proprietary lease. 42 U.S.C. § 3604(f)(1)–(2). Plaintiff alleges Fiorentino "acted as an agent and/or employee of Woodlands Apartment Corp.," AC p. 17, ¶ 67, but this allegation is conclusory. There are no facts suggesting Fiorentino has the authority to make plaintiff's property actually or effectively unavailable, to enforce the lease, or to control the provision of services or facilities. *See* 42 U.S.C. § 3604(f)(1)–(2).

To the extent plaintiff points to Fiorentino's email to Woodlands Defendants and testimony on behalf of Woodlands Defendants in the holdover proceeding, that does not move the needle. These statements do not support the reasonable inference that Fiorentino was an agent or employee of Woodlands Defendants such that he had relevant authority pursuant to Section 3604(f). Plaintiff has not provided any allegations such that the Court could reasonably infer that Fiorentino's statements that plaintiff should reside in a home for people with disabilities were made as an agent for Woodlands Defendants, rather than in his personal capacity. And though his testimony was used to support Woodlands Defendants' case in the holdover proceeding, there are no allegations that Fiorentino had authority to initiate the holdover proceeding. *See Cain v. Rambert*, No. 13-cv-05807, 2014 WL 2440596, at *5 (E.D.N.Y. May 30, 2014) (holding tenants were not liable for FHA violation because they did not have any control or authority of the "terms, conditions, or privileges of the rental of [p]laintiff's dwelling, or in the provision of services or facilities in connection therewith").

Thus, plaintiff's Section 3604(f) claim is dismissed as to Fiorentino.

### III.    42 U.S.C. § 3613 (Count IV)

Section 3613 is the statutory provision that creates a private right of action allowing an aggrieved individual to bring FHA claims in certain circumstances. Specifically, pursuant to Section 3613(a)(1)(A), a person may initiate an action in federal or state court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice[.]" Pursuant to Section 3613(c)(1): "in a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred . . . the court may award to the plaintiff actual and punitive damages . . . and may grant as relief, as the court deems appropriate, any permanent or temporary injunction[.]" However, the Court has found no authority to support plaintiff's argument that Section 3613 is an independent cause of action by which an aggrieved individual can seek relief for discriminatory housing practices. *See, e.g.*, *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (explaining Section 3613 defines who is an "aggrieved person" under the FHA and thereby has Article III standing); *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 101 (2d Cir. 2024) (construing Section 3613's "person" who may be sued for a discriminatory to housing practice to include entities such as municipalities and corporations). Nor does plaintiff supply any authority that Section 3613 is an actionable provision under the FHA. *See* Opp'n 29. Accordingly, plaintiff's Section 3613 claim is dismissed.

### IV.    42 U.S.C. § 3617 (Count V)

Plaintiff next alleges that defendants interfered with her right to use and enjoy her home by creating a hostile housing environment in violation of Section 3617 of the FHA. AC ¶¶ 106–13. Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere

with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604." 42 U.S.C. § 3617. A plaintiff bringing a hostile housing environment claim must establish: "(1) that she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord." *A.L.M. v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19-cv-2771, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order); *see also Levy v. Lawrence Gardens Apartments Del, LLC,* No. 21-cv-01415, 2023 WL 2667045, at *4 (E.D.N.Y. Mar. 28, 2023) (same but for discrimination because of a "handicap") (citing *Cain*, 2014 WL 2440596, at *5).

"Whether hostile environment harassment exists depends upon the totality of the circumstances." 24 C.F.R. § 100.600(a)(2)(i). The "[f]actors to be considered . . . include . . .the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." 24 C.F.R. § 100.600(a)(2)(i)(A). "Whether unwelcome conduct is sufficiently severe or pervasive . . . is evaluated from the perspective of a reasonable person in the aggrieved person's position." 24 C.F.R. § 100.600(a)(2)(i)(C).

### A. *Woodlands Defendants*

Plaintiff alleges that Woodlands Defendants violated Section 3617 by engaging in litigation to evict her on the basis of her disability. Opp'n 30–32. Specifically, plaintiff alleges that violations were improperly issued against her following the November 2023 incident and January 2024 incident, which in turn prompted the holdover proceeding. AC ¶ 33. However, plaintiff alleges that those two incidents were not violations but

nevertheless were "selectively pursued" against her because of her disability, while similar "violations" were not pursued against another leaseholder without a disability. AC ¶ 31.

Plaintiff also alleges she was subject to persistent harassment by other leaseholders and that Woodlands Defendants did not take steps to stop the harassment. Specifically, Fiorentino "continually" called the police on her, made "derogatory comments about her," AC ¶ 100, looked through her window to observe plaintiff, and made discriminatory comments against plaintiff outside her apartment, AC ¶ 12. She alleges various neighbors took photos and videos of her and vandalized her property. AC ¶¶ 12–13. Plaintiff alleges "a neighbor physically assaulted" her "on the premises" but Woodlands Defendants "did nothing about this incident." AC ¶ 14. When plaintiff complained of this conduct, she avers Woodlands Defendants failed to intervene. Instead, she had to call the police. *See* AC ¶ 14. The harassment was so pervasive and severe as to cause plaintiff emotional and physical distress. AC p. 17, ¶ 71. She purports she felt fearful and locked herself inside her apartment for periods of time. AC ¶¶ 51–52.

Plaintiff claims the holdover proceeding and her neighbors' harassment were motivated by discriminatory animus on the basis of her disability. AC ¶¶ 15, 23. Plaintiff is correct that Woodlands Defendants could be held liable for the discriminatory conduct of plaintiff's neighbors. But this requires a showing that Woodlands Defendants "exercised substantial control over the context in which the harassment occurs and over the [other leaseholders]." *Francis*, 992 F.3d at 75; *see also supra* II.B.i.d. Plaintiff's conclusory allegations fail to provide a basis to infer that Woodlands Defendants' actions were motivated by discrimination or, separately, to impute the allegedly harassing conduct of other leaseholders on Woodlands Defendants.

Accordingly, plaintiff's claim under Section 3617 against Woodlands Defendants is dismissed with leave to amend.

### B. Law Firm Defendants

As discussed supra, plaintiff's allegations against Law Firm Defendants arise from their representation of Woodlands Defendants, thus, plaintiff's Section 3617 claim is dismissed against Law Firm Defendants.

### C. Defendant Fiorentino

As stated supra, plaintiff has not provided facts to support that Fiorentino is an agent or employee of Woodlands Defendants, thus plaintiff's Section 3617 claim against this defendant is dismissed.

## V. NYSHRL § 296(5) (Count VI)

Plaintiff alleges Woodlands Defendants discriminated against her in the conditions and privileges of her housing on the basis of her disability in violation of NYSHRL Section 296(5). AC ¶¶ 114–18. NYSHRL Section 296(5) prohibits discrimination by an "owner, . . . managing agent of, or other person having the right to sell, rent or lease a housing accommodation, . . . or any agent or employee thereof . . . against any person because of . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith." NYSHRL Section 296(5)(a)(2). NYSHRL Section 296(5) parallels Section 3604 of the FHA. *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152–53 (2d Cir. 2014). "Housing discrimination claims under [NYSHRL] Section 296 are evaluated under the same [*McDonnell Douglas*] framework" as FHA claims. *Mitchell v. Shane*, 350 F.3d 39, 47 n.4 (2d Cir. 2003); *see Barkley v. Olympia Mortg. Co.,* No. 04-cv-00875, 2007 WL 2437810, at *18 (E.D.N.Y. Aug. 22, 2007) ("[T]he standards relevant to [the NYHRL]

claims parallel those applicable under the Fair Housing Act."). As relevant here, NYSHRL imposes liability on cooperatives, board of directors, and housing management companies. *See, e.g.*, *Stalker v. Stewart Tenants Corp.*, 940 N.Y.S.2d 600 (1st Dep't 2012) (declining dismissal of NYSHRL claims against cooperative corporation and its board of directors). Thus, Woodlands Defendants are the types of entities that could be held liable under NYSHRL Section 296(5). However, for the same reasons plaintiff's Section 3604(f) claim fails, plaintiff's claim under NYSHRL § 296(5) also fails. *See, e.g.*, *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 375–76 (E.D.N.Y. 2008) (analyzing simultaneously the plaintiffs' claims under FHA § 3604(f) and NYSHRL Section 296(5)).

Accordingly, plaintiff's claim under NYSHRL Section 296(5) is dismissed with leave to amend.

## VI.     NYSHRL § 296(6) (Count VII)

Plaintiff brings a NYSHRL Section 296(6) claim against all defendants, and each move to dismiss on the grounds that there is no predicate discrimination claim or discriminatory act that would give rise to a claim under this section. Woodlands Mot. 15; LF Mot. 15–16; Fiorentino Mot. 10. Under NYSHRL Section 296(6), "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the NYSHRL. Whereas NYSHRL Section 296(5) limits who may be liable to "owner[s], . . . managing agent[s] of, or other person having the right to sell, rent or lease a housing accommodation, . . . or any agent or employee thereof," NYSHRL Section 296(5), Section 296(6) of the NYSHRL has no such limiting language and instead imposes a "broad source of personal liability." *Fair Hous. Just. Ctr., Inc. v. Broadway Crescent Realty, Inc.*, No. 10-cv-00034, 2011 WL 856095, at *8 (S.D.N.Y. Mar. 9, 2011) (finding defendant who was neither an employee or agent of the

23

housing complex could not be sued under Section 296(5) but could be liable for aiding and abetting discriminatory housing practices under Section 296(6)); *see also Johnson v. County of Nassau*, 82 F. Supp. 3d 533, 536–37 (E.D.N.Y. 2015) (holding employee could be held liable for aiding and abetting employer's discrimination under NYSHRL Section 296(6) even though the claims against the employer and fellow employees were dismissed on procedural grounds). Liability under NYSHRL Section 296(6) is established when a defendant "actually participates in the conduct giving rise to a discrimination claim." *Chanval Pellier v. Brit. Airways, Plc.*, No. 02-cv-04195, 2006 WL 132073, at *12 (E.D.N.Y. Jan. 17, 2006); *see also Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 254 (E.D.N.Y. 2018) ("In order for a defendant to be liable as an aider and abettor under Section 296(6), a plaintiff must first establish the existence of a primary violation of the NYSHRL by [the] principal.") (collecting cases); *Favourite*, 381 F. Supp. 3d at 285 (explaining *McDonnell Douglas* burden-shifting test applies to the FHA and the NYSHRL and finding that because FHA and NYSHRL claims were factually intertwined, the plaintiff's NYSHRL Sections 296(5) and 296(6) claims also fail for the same reasons).

As to Woodlands Defendants, the Court dismisses plaintiff's NYSHRL Section 296(6) claim. Here, plaintiff realleges the arguments made as to her Section 3617 claim, principally that Woodlands Defendants have failed to intervene or investigate the alleged discriminatory conduct, facilitated a hostile housing environment, and thereby aided and abetted in unlawful discrimination on the basis of her disability. *Compare* AC ¶ 121 *with* AC ¶ 112. However, plaintiff fails to make non-conclusory allegations to create an inference that discriminatory conduct occurred. *Griffin*, 291 F. Supp. 3d at 254 ("Indeed, the reason [NYSHRL Section] 296(6) requires a primary violation is intuitive—where there has been no discrimination this is nothing to aid or abet."). The Court notes that to

support her claim against Woodlands Defendants, plaintiff alleges new facts in her opposition brief. *See* Opp'n 35–36. Plaintiff alleges that she made numerous accommodation requests including that "all communications regarding . . . the cooperative apartment in terms of upgrades, modifications, improvements, repairs, payments, and the like be communicated to . . . [p]laintiff's family members"[8] in light of "[p]laintiff's age, disability, and hospital visits for medical conditions." Opp'n 35. She also asserts that these requests were denied. Opp'n 35. These allegations were not included in plaintiff's complaint and need not be considered by the Court when resolving the motions to dismiss. *Arbeeny v. Cuomo*, No. 22-cv-02336, 2025 WL 71729, at *3 (E.D.N.Y. Jan. 10, 2025), *aff'd*, No. 24-2856, 2025 WL 3079217 (2d Cir. Nov. 4, 2025) (declining to consider new facts asserted for the first time in plaintiff's opposition to a motion to dismiss and not alleged in the amended complaint).

---

[8] To the extent plaintiff contends that her Opposition merely adds more detail to the allegation made in the Amended Complaint that she "requested accommodation in the form of communications through counsel for all invoices and other related matters," AC p. 13, ¶ 66, her argument under a reasonable accommodation theory still fails. Plaintiff makes only conclusory allegations that do not support a reasonable inference that the requested accommodation was necessary "to afford plaintiff an equal opportunity to use and enjoy a dwelling." *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 340 (E.D.N.Y. 2012) (citing *Evans v. UDR, Inc.*, 644 F. Supp. 2d 675, 690 (E.D.N.C. 2009) ("In order for an accommodation to be deemed necessary, there must be some causal connection between the proposed accommodation and the equal opportunity to be afforded the person with a disability.")). Plaintiff fails to allege a causal connection between the request—"all communications" concerning upgrades, modifications, improvements, repairs, payments, etc. about the apartment be made with plaintiff's family members—and her use and enjoyment of the apartment. *See* Opp'n 35. Moreover, plaintiff has failed to plead any relationship between the request and her disability. *See CNY Fair Hous. Inc. v. Welltower Inc.*, 588 F. Supp. 3d 282, 296–97 (N.D.N.Y. 2022) (finding senior housing facility failed to make a reasonable accommodation by refusing to waive a rent surcharge on units located near an elevator that were necessary for plaintiffs with mobility disabilities).

Further, plaintiff has not alleged any acts demonstrating Law Firm Defendants "actually participate[d] in the conduct giving rise to [the] discrimination claim" aside from their representation of Woodlands Defendants. *See Pellier*, 2006 WL 132073, at *12. Thus, plaintiff's NYSHRL Section 296(6) claim against Law Firm Defendants is dismissed. As to Fiorentino, the Court also dismisses this claim. Though, unlike NYSHRL Section296(5), Fiorentino need not be an agent of Woodlands Defendants to be held liable under Section296(6), plaintiff still has not alleged sufficient facts to support an inference that Fiorentino's conduct was because of plaintiff's disability or that he otherwise aided and abetted discriminatory conduct.

Accordingly, plaintiff's claim under NYSHRL Section296(6) is dismissed against all defendants.

## VII.    Negligent Infliction of Emotional Distress (Count VIII)

To plead a claim for NIED under New York law, a plaintiff must allege "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis*, 992 F.3d at 81. "[T]here are limited recognized contexts in which a claim of NIED may be viable. A plaintiff must plead, in addition to the elements above, facts making out one of three theories: (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory." *Truman v. Brown*, 434 F. Supp. 3d 100, 122–23 (S.D.N.Y. 2020) (citing *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)).

As relevant here, a direct duty is established if defendant has a specific duty to plaintiff, that is, not a generalized duty, but one that is specific to the plaintiff. *See Clark v. New York City Hous. Auth.*, No. 24-cv-01625, 2025 WL 763993, at *7 (S.D.N.Y. Jan. 31, 2025), *report and recommendation adopted*, 2025 WL 654988 (Feb. 28, 2025), *aff'd*,

No. 25-cv-486, 2025 WL 3702955 (2d Cir. Dec. 22, 2025). Under New York law, "[a] landlord has no duty to prevent one tenant from attacking another tenant unless it has the authority, ability, and opportunity to control the actions" of the other tenant. *Britt v. N.Y.C. Hous. Auth.*, 770 N.Y.S.2d 744, 745 (2d Dep't 2004).

Here, plaintiff has failed to sufficiently plead that Woodlands Defendants breached their duty to "keep [p]laintiff free from [] unreasonabl[e] endangerment for her safety and further breached the duty in failing to keep her free from harassment, discrimination, and fear of homelessness and violence from the neighbors, causing [p]laintiff to fear for her safety[.]" AC ¶ 124. Plaintiff pleads that Woodlands Defendants' "failure to investigate and intervene on plaintiff's behalf in response to Mr. Fiorentino's violent threats towards [plaintiff] constitutes extreme and outrageous conducted and caused [plaintiff] severe emotional distress." AC ¶ 128. Yet, plaintiff fails to allege that Woodlands Defendants owed her a specific duty to investigate and address the conduct of a third party. *Lally v. Klick USA, Inc.*, No. 23-cv-10293, 2025 WL 786576, at *7 (S.D.N.Y. Mar. 11, 2025) (dismissing employee-plaintiff's negligent infliction of emotional distress claim for failure to allege a duty owed and breach of that duty by employer-defendant). Nor does plaintiff explain the scope of Woodlands Defendants' duty—that is, the specific basis to find Woodlands Defendants' "relationship" with Fiorentino was one that "encompasses [Woodlands Defendants'] actual control of [Fiorentino's] actions." *Abdulaziz v. McKinsey & Co., Inc.*, No. 21-cv-2921, 2022 WL 2444925, at *2 (2d Cir. July 5, 2022) (summary order). Accordingly, plaintiff's claim for NIED against Woodlands Defendants is dismissed.

As for Law Firm Defendants and Fiorentino, plaintiff has not asserted any basis for a duty owed to her by either defendant. Thus, her NIED claim fails against them as well.

## VIII. Intentional Infliction of Emotional Distress (Count IX)

To assert a valid claim for IIED under New York law, a plaintiff must demonstrate: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Reyes*, 661 F. Supp. 2d at 270 (citing *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir. 1996)). The bar for "outrageous and extreme" is high and must be "utterly intolerable in a civilized society." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir. 1985).

As with her NIED claim, plaintiff alleges Woodlands Defendants failed to keep her free from unreasonable endangerment, harassment, discrimination, and fear of homelessness and violence from neighbors. AC ¶ 132. Plaintiff asserts Woodlands Defendants failed to investigate Fiorentino's threats and harassment as well as the conduct of other leaseholders, but does not allege what, if any, response she received from Woodlands Defendants. *See* AC ¶ 26. For example, plaintiff does not allege whether her messages or calls to Woodlands Defendants went entirely unanswered, or whether defendants discussed the incidents with the leaseholders, even if further investigation did not occur. Plaintiff's conclusory allegations that Woodlands Defendants failed to investigate leaseholder conduct does not support an inference of extreme and outrageous conduct. Plaintiff also fails to provide any facts to support that Woodlands Defendants' conduct was intended to cause her severe emotional distress. Thus, plaintiff's IIED claim against Woodlands Defendants is dismissed.

Similarly, plaintiff's IIED claim against Law Firm Defendants must be dismissed because she fails to allege any facts suggesting extreme and outrageous conduct on their part. Plaintiff's allegations against Law Firm Defendants arise solely from their representation of Woodlands Defendants in the holdover proceedings. These facts do not

support a reasonable inference of extreme and outrageous conduct by Law Firm Defendants, and this claim is dismissed.

Plaintiff's IIED claim against Fiorentino is also dismissed. Plaintiff's allegations concerning Fiorentino are grounded in his disparaging comments and testimony in the holdover proceedings. *See* Opp'n 41–42. Such allegations are not adequate to meet the high bar of extreme and outrageous actions. "Conduct may be extreme and outrageous where there is a deliberate and malicious campaign of harassment or intimidation." *See Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 217–18 (S.D.N.Y. 2024) (holding plaintiff plausibly alleged IIED where she asserts repeated suspensions in short period of time, repeatedly calling the police, failing to intervene in school bullying, among other things amounted to a campaign of harassment). However, plaintiff fails to provide sufficient facts indicating that Fiorentino embarked on a campaign of harassment, as well as fails to plead any facts to support the inference that the alleged conduct was intended to cause her severe emotional distress. Thus, plaintiff's IIED claim against Fiorentino is dismissed.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are granted. Plaintiff's FHA claims under Sections 3601, 3604(b), and 3613, and NIED and IIED claims are dismissed for failure to state a claim. Plaintiff's remaining claims against Woodlands Defendants under Sections 3604(f) and 3617, and NYSHRL Sections 296(5) and 296(6) are dismissed with leave to amend. Plaintiff's claims against Law Firm Defendants and Fiorentino are dismissed in their entirety. Plaintiff has until April 30, 2026 to amend her complaint in light of this Court's Order.

The Clerk of Court is respectfully directed to terminate Law Firm Defendants and Fiorentino from the case.

**SO ORDERED.**

/s/ *Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:      March 31, 2026
             Brooklyn, New York